905 So.2d 909 (2005)
SCHOOL BOARD OF OSCEOLA COUNTY, Appellant,
v.
UCP OF CENTRAL FLORIDA, Appellee.
No. 5D04-1140.
District Court of Appeal of Florida, Fifth District.
April 22, 2005.
*910 Usher Larry Brown, Suzanne D'Agresta and Erin J. O'Leary of Brown, Garganese, Weiss & D'Agresta, P.A., Orlando, for Appellant.
Michael Olenick and Stacey K. Sutton of Carlton Fields, West Palm Beach, for Appellee.
Jennifer S. Blohm of Meyer and Brooks, P.A., Tallahassee, Amici Curiae, The Florida School Boards Association, Inc.
PETERSON, J.
The School Board of Osceola County, ("School Board"), appeals the Florida State Board of Education's, ("State Board"), reversal of the School Board's denial of United Cerebral Palsy of Central Florida's, ("UCP"), application for the establishment of a charter school.
Following the procedures established in section 1002.33(6), Florida Statutes (2003), UCP submitted its application for the establishment of a charter school to the School Board. Using a system of ratings, School Board officials awarded the application a score of 51.8 points, with 60 points being the maximum awardable. The School Board conducted a hearing, but denied the application because (1) approval would further dilute the capital funding of all new and existing charter schools under the current funding scheme, and (2) UCP's intent to fund capital expenditures from operating funds would further reduce the already low operating budgets of new and existing charter schools in the county, resulting in each student receiving less of an education.
UCP timely appealed the decision to the State Board and the Charter School Appeals Commission, ("Commission"), acting under the authority of section 1002.33(6), unanimously recommended approval of the charter school application. The State Board accepted the Commission's recommendation that the denial of the application based upon perceived inadequate charter school capital outlay funding did not constitute statutory good cause pursuant to section 1002.33.
The School Board then initiated this appeal but requested transfer to the circuit court because the School Board believed that court had jurisdiction rather than a district court of appeal.

JURISDICTION
Section 1002.33(6), Florida Statutes (2003), provides that the State Board of Education's final order following a review of a District School Board's decision is a final action subject to judicial review, but does not specify the court having jurisdiction of the review.
Article V, § 4(b)(2) of the Florida Constitution provides that "District Courts of Appeal shall have the power of review of administrative action, as prescribed by general law," but Article V, § 5 also parrots this language to place the power of direct review of administrative actions in the circuit courts. These provisions leave to the Florida Legislature the manner in which appeals may be taken from administrative agencies.
The Legislature has taken this cue from the constitution and enacted a general law in charter school applications by providing in section 1002.33(6), Florida Statutes (2002), that the State Board's review of a District School Board's decision is a final action subject to judicial review. By not specifying the court in which the judicial review is to take place, the Legislature has generated the quandary faced by the litigants and this court in determining which court, circuit or district, is to review the State Board's decision.
*911 Initially, we observe that the appeal provisions of Chapter 120 of the Florida Statutes, the "Administrative Procedure Act," are not applicable because section 1002.33(6)(c) specifically exempts decisions rendered by the State Board from that act. The parties to this appeal agree that the avenue of appeal is not provided by chapter 120, notwithstanding the inclusion in the State Board's final order that judicial review of its order is available pursuant to section 120.68, Florida Statutes, a subsection of the Administrative Procedure Act.
In the absence of legislative selection of the proper forum, we turn to the Florida Rules of Appellate Procedure, but those rules do not precisely prescribe the court in which Charter School decisions are to be reviewed. Rule 9.030(b)(1)(C), prescribing the appellate jurisdiction of district courts and rule 9.030(c)(1)(C), prescribing the appellate jurisdiction of circuit courts, mirror the language that each of the courts "shall review, by appeal . . . administrative action if provided by general law." As stated earlier, the Legislature has enacted a general law establishing review by appeal, but omitted specifying the appropriate forum.
If analysis of the appellate rules stopped at this point, one could preliminarily conclude that both the circuit court and district court would have jurisdiction under the rules to entertain review of the State Board's decision. However, a concurrent jurisdiction conclusion is not practical. Additionally, if one were to file an appeal with the circuit court, still another appeal would be allowable to the district court pursuant to rule 9.030(b)(2)(B) which prescribes jurisdiction in the district courts to review "final orders of circuit courts acting in their review capacity." Surely, the Legislature did not intend to create a third tier of review from a local school board decision; the third appeal would be possible if we accepted the School Board's argument.
In Orange Ave. Charter School v. St. Lucie County School Bd., 763 So.2d 531 (Fla. 4th DCA 2000) review denied, 786 So.2d 1187 (Fla.2001), a charter school sought administrative review of an order of the county school board denying renewal of the school's charter to serve at-risk students. The State Board rejected the school board's initial determination and remanded the case for further consideration. On remand, the school board conducted a full evidentiary public hearing in which it again decided not to renew the school's charter.[1] The school board's subsequent denial after remand constituted a final action for purposes of review.[2] Notably, the charter school filed a direct appeal of the school board's ruling with the Fourth District Court of Appeal, not with the circuit court. Admittedly, the district court's opinion did not address the jurisdictional issue that is raised here. Similarly, in School Bd. of Nassau County v. Arline, 408 So.2d 706 (Fla. 1st DCA 1982) affirmed on other grounds, 480 U.S. 273, 107 S.Ct. 1123, 94 L.Ed.2d 307 (1987), the district court heard a direct appeal from the school board regarding a final order issued by the state board. Again, that court's opinion did not discuss the court's jurisdiction.
Other authorities support a district court's jurisdiction over this matter. See § 23.2 Phillip J. Padovano, Florida Appellate *912 Practice 380 (noting that administrative decisions of state agencies are appealable either to the supreme court or to the district court of appeal). For purposes of appeal, there is no substantive difference between the final action taken by the State Board here and the final action taken by the St. Lucie school board[3] in Orange Ave or the final order issued by the state board in School Bd. of Nassau County.
Finally, the Orange Ave. decision was decided in the year 2000, giving the Legislature an opportunity to make its intent known if it differed with those decisions in which the district court entertained jurisdiction in charter school decisions.
The School Board cites Eckert v. Bd. of Comm. of N. Broward Hosp. Dist., 720 So.2d 1151 (Fla. 4th DCA 1998), in support of its argument that jurisdiction is properly in the circuit court. In Eckert, a physician petitioned the Fourth District Court of Appeal by writ of certiorari seeking review of a hospital district's decision to suspend his staff privileges. The Eckert court held that it lacked jurisdiction over the matter and transferred the case to the circuit court because it considered the hospital district to be purely local in nature, in that it was a special taxing district created by special law that operated wholly within the county. The court noted that "if an administrative agency does not qualify as a state agency under the Administrative Procedure Act (APA), it is considered to be a local administrative body whose decisions are reviewable by certiorari in the circuit court." We do not view Eckert as dispositive in the instant case because it was an appeal from a local hospital district rather than a state-wide agency; to-wit: the Florida State Board of Education.
The preceding analysis leads us to the conclusion that the district courts and not the circuit courts have jurisdiction to review the final decisions described in section 1002.33(6)(d), Florida Statutes (2003).

REQUIREMENT OF GOOD CAUSE
UCP's application for a charter school may be denied by the School Board for "good cause." § 1002.33(6)(b)3, Fla. Stat. (2003). Unfortunately, the term "good cause" is not defined in the charter school legislation. The reason given by the School Board to justify its denial of the application and qualify as good cause was inadequate charter school capital funding. However, both the Commission and the State Board agreed that the School Board's reason did not constitute the statutory "good cause" that would support denial of the charter school application.[4]
*913 The State Board determined that the School Board did not have good cause to reject the charter school application because the applicant met all the statutory requirements for an approval as established by section 1002.33(6). The School Board disagrees with this interpretation and argues that good cause may be based upon factors other than those specified by the statute.
Under Florida law, each school board is charged with fiscal responsibility over all free public schools, including charter schools, within their district and must ensure that all children are provided with adequate educational facilities and instructional materials.[5] Each school board is required to consider the financial feasibility of each new school, and to assess the impact that newly approved charter schools will have on each existing school's ability to provide a quality education to each of its students.[6] The School Board argues that these broad legislative mandates coupled with UCP's financial plan and the unique financial problems that plague the Osceola County School district, provide the requisite good cause to support its denial. Although inadequate school funding is a recognized problem throughout Florida, the argument must fail for the following reasons.
The School Board provided two grounds for its denial:
1. It is neither fiscally responsible nor in the best interest of students to approve any more charter applications under the current funding scheme because such approval will further dilute the capital funding for all charter schools in the district.
2. It is not in the best interest of students to approve a charter application whose financial model requires that all capital expenditure be paid for through operational funds because that school's students will receive less of an education.[7]
The first ground is without merit. Section 1013.62(1) addresses capital outlay funding for charter schools and provides in relevant part:
In each year in which funds are appropriated for charter school capital outlay purposes, the Commissioner of Education shall allocate the funds among eligible charter schools. To be eligible for a funding allocation, a charter school must:
(a) 1. Have been in operation for 3 or more years;
2. Be an expanded feeder chain of a charter school within the same school district that is currently receiving *914 charter school capital outlay funds; or
3. Have been accredited by the Commission on Schools of the Southern Association of Colleges and Schools.
UCP did not qualify to receive funds under any of the foregoing provisions, and if UCP's application were approved, the creation of the new school would have no impact on the capital funding currently provided to existing charter schools in the county for at least the first three years. The School Board was aware of this fact when it provided UCP with a high passing score on its Charter School Application Rating Form, which included an analysis of UCP's short and long-term financial plan. In fact, the record shows that the School Board admitted that its denial was based on a projection of how much funding will be available in the future. In rejecting UCP's application, the School Board made a broad, unsupported assumption that the current funding scheme will remain unchanged over the next three years although funding is unpredictable.
The second ground for denial is based on conjecture and is also without merit. The evidence demonstrates that at the time UCP's application was denied, Osceola County had received the lowest state operational funding of any school district in the state, ranking 67th out of 67 school districts. Collectively, the existing charter schools in the county extracted $1,896,026 from the total operational budget due to the legislative freeze on state-wide capital funding.[8] As a result, eight of the ten existing charter schools currently operate with deficit balances.[9] The School Board considered these facts and concluded that due to the lack of capital funding, approval of a new charter school will necessarily result in each student receiving less of an education, providing good cause to deny UCP's application. Inadequate funding is a serious issue that continues to plague Florida school districts. Most public schools have reached capacity, classes remain overcrowded and salaries remain low, making it difficult to retain high quality teachers. However, a denial based on good cause contemplates a legally sufficient reason.
Here, the record is completely devoid of any empirical evidence that correlates inadequate education with the lack of capital funding or a reduction in operational funding. The School Board failed to provide any evidence to support its contention that students attending schools that are inadequately funded receive less of an education, or evidence that students attending UCP's charter school would be more educationally deficient than students attending previously approved charter schools or other public schools in the district. The School Board asserts that the actual adverse impact Osceola County charter schools have experienced with regard to capital funding was "fully discussed" at the School Board meeting. But, the transcript from that hearing is not contained in the record, making it impossible to determine whether any empirical evidence was presented at that time to support its denial.
The School Board also cites Orange Ave. to support its denial of UCP's application. In that case, the Fourth District Court of Appeal found that the school board established good cause to deny renewal of the school's charter. Importantly, the school *915 board presented substantial empirical evidence of specific factors that warranted denying the school's request for renewal. Specifically, the school board presented evidence which demonstrated that: (1) only a small percentage of students were projected to score at, or above, the median on standardized tests, (2) community and parental support of the school sharply declined, (3) enrollment declined, (4) meetings were unsuccessful and unorganized, and (5) management ran the school inefficiently. But in the instant case, the School Board presented no direct evidence of harm or adverse impact that would result if UCP's application was approved. At best, the School Board demonstrated that its district is woefully under-funded.
The School Board implies that under the current funding scheme, the creation of new charter schools places existing schools at an increased risk of losing funding in the event the charter school fails and must be taken over by the school district.[10] This is not entirely correct.[11] Although the district would likely experience some financial impact associated with a charter school's failure, the amount is unclear and does not appear to warrant denial on that basis alone. Sections 1002.33(14) and 1013.62(7) provide for indemnification of school boards from the private debts of a charter school. Further, in the event a charter school fails, the school's infrastructure would already exist, potentially saving the school district significant amounts of money in new construction costs that it otherwise would have been required to expend in the absence of the charter school.
Despite the legislative freeze on capital funding, and a significant increase in the number of charter school applications, the Florida Charter School Review Panel recommended to the Florida Legislature that it repeal section 1002.33(13), which placed a cap on the number of charter schools that could operate within a district.[12] The Panel recommended that the number of charter schools should be based on the: (1) parental demand for educational opportunities, and (2) corresponding supply of meritorious charter schools, rather than on the amount of available funding. The Legislature agreed and repealed section 1002.33(13) in 2003.[13] By doing so, the Legislature clearly intended the denial of a charter school application to be based on more than projections of future financial impact on other schools or unsupported assumptions on the quality of education that may be provided by under-funded schools. Otherwise, each district could prevent the construction of new charter schools by simply claiming financial hardship and an inability to provide a quality education to its students. Under these facts it appears that lack of capital funding or use of operational dollars to fund capital expenses does not constitute good cause to deny a charter school application. The propriety of allowing new school construction to continue while state funding remains frozen is clearly a matter of debate best directed to the Legislature and not this court.
It cannot be disputed that UCP's application met all the statutory requirements. The School Board presented no empirical *916 evidence to support its position that approval of UCP's application for a new charter school would adversely impact other schools in the district, or result in students receiving an inferior education, and therefore failed to demonstrate that it had good cause to deny UCP's application. The comments contained in the record suggest that the School Board denied the application in an effort to prompt the Florida Legislature to commence reform of the current charter school funding scheme. A court is not the proper forum to consider such policy issues. Because the State Board's action is supported by competent, substantial evidence in the record, we affirm the final order.
We find no merit in the remaining issues raised by the School Board.
AFFIRMED.
SAWAYA, C.J., and MONACO, J., concur.
NOTES
[1] Section 228.056(4), Florida Statutes (2001) (repealed 2002), permitted a school board to override the recommendation of the state board upon a showing of good cause. That section was subsequently repealed and incorporated as amended into section 1002.33, Florida Statutes.
[2] Id.
[3] See Board of Public Instruction of Broward County v. State ex rel. Allen, 219 So.2d 430, 432 (Fla.1969) (holding that a county school board is a part of the state system of public education and is also a state agency within the purview of the APA).
[4] We note that recent statutory amendments have increased the power of the State Board to override decisions of school boards on charter school applications. Chapter 228 of the State Education Code formerly empowered a school board to override the State Board's decision for good cause. § 228.056, Fla. Stat. (2001) (repealed 2002). This power has been abrogated through enactment of the Florida K-20 Education Code, Chapters 1000-1002, Florida Statutes (2003). Section 1002.33(6) now provides in relevant part:

(b) The State Board of Education shall by majority vote accept or reject the decision of the district school board no later than 90 calendar days after appeal is filed. . . . The State Board of Education shall remand the application to the district school board with its written decision that the district school board approve or deny the application. The district school board shall implement the decision of the State Board of Education. (emphasis added).
(c) The district school board shall act upon the decision of the State Board of Education within 30 calendar days after it is received. The State Board of Education's decision is a final action subject to judicial review.
[5] See § 1001.41(1), Fla. Stat. (2003) (requiring the school board to take actions necessary for the improvement of the district); § 1001.42(4)(c), (requiring the school board to provide adequate educational facilities); § 1001.42(7) (requiring the school board to provide adequate instructional materials); § 1001.42(10) (requiring the school board to determine the amount of funds necessary to operate all schools).
[6] See § 1002.33(5)(b)2, Fla. Stat. (requiring the school board, as sponsor, to monitor the revenues and expenditures of each charter school); § 1002.33(6)(a)5(b) (requiring the school board to review the financial plan contained in each charter school application).
[7] In Florida, charter schools are funded by both capital and operating funds. Capital funds are intended to completely fund the construction and debt service of each charter school, while operating funds are used to pay instructional salaries, purchase instructional materials and cover all other expenses needed to operate a school.
[8] The State discontinued capital funding, with limited exceptions, after the 2003-2004 school year. See generally § 1013.62(7), Fla. Stat. (2003).
[9] The School Board attached a table to its appeal showing the operational budgets, and deficits, of each charter school in Osceola County between 2002 and 2003.
[10] See § 1002.33(8)(d), Fla. Stat. (2003) (requiring the district to assume control over a failed charter school within the district).
[11] We also note that funding for charter schools can be supplemented by private donations.
[12] See Recommended Revisions to Florida's Charter School Code, An Annual Report to the Legislature, Governor and Secretary of Education 8 (Dec. 18, 2002).
[13] See 2003-393 Laws of Florida.